

# IN THE
# TENTH COURT OF APPEALS

No. 10-12-00321-CR
No. 10-12-00322-CR
No. 10-12-00323-CR

**RICHARD LEE MCINTYRE,**

Appellant

 **v.**

**THE STATE OF TEXAS,**

Appellee

From the 40th District Court
Ellis County, Texas
Trial Court Nos. 36369CR, 36370CR and 36371CR

## MEMORANDUM OPINION

In five issues in each of the three associated appellate cause numbers, appellant, Richard Lee McIntyre, challenges the trial court's denial of his motion to suppress and his convictions for two counts of possession of a controlled substance greater than one gram but less than four grams and one count of possession of a controlled substance in

an amount greater than four grams but less than 200 grams with intent to deliver.[1] *See*

TEX. HEALTH & SAFETY CODE ANN. §§ 481.112(a), 481.115(a) (West 2010). We affirm.

## I. BACKGROUND

On September 9, 2011, Investigators Cody McKinney and Cody Moon of the Midlothian Police Department were working with a federal task force in the execution of a search warrant on a house. While searching the house, the investigators learned that the homeowner was expecting his marihuana supplier to make a delivery. The homeowner provided the investigators with the supplier's name—Pablo Vasquez—and a description of the vehicle the supplier drives. Vasquez arrived while the investigators were still searching the house. Upon arrival, Vasquez was arrested for possessing a misdemeanor amount of marihuana.

In an effort "to cooperate and help himself out," Vasquez informed the investigators that "he could arrange for an ounce of methamphetamine to be delivered to Midlothian." The investigators allowed Vasquez to use his cell phone to contact his source. Vasquez communicated with his source—a person named Chappo—using text messages, which the investigators monitored. During the course of the communications, Chappo's cell phone started to "die," so Chappo began to use his girlfriend's cell phone. Vasquez identified Chappo's girlfriend as Amber.

---

[1] Appellant's issues presented do not correspond with the issues raised in the body of the brief. In his table of contents, appellant asserts that his issues are: (1) that the trial court erred in denying his motion to suppress; (2) the evidence is legally insufficient to support the jury's verdict; (3) the evidence is factually insufficient to support the jury's verdict; and (4) the confidential witness used by police was not reliable and akin to an accomplice. However, in the body of his brief, appellant abandons the factual-sufficiency issue and asserts another issue not listed in the table of contents—that he was denied the full opportunity to exercise his challenges for cause to an unacceptable juror on the panel. *See* TEX. R. APP. P. 38.1(b). Appellant's brief also lacks an issues presented section and a summary of the argument for each issue, both of which are required by Texas Rule of Appellate Procedure 38.1. *See id.* at R. 38.1(f), (h).

In exchange for $1,400, Chappo agreed to deliver an ounce of methamphetamine. The parties initially agreed to meet at a Walmart parking lot; however, Chappo later asked to meet at a house instead. The investigators knew of a vacant house located at 920 Crockett Street in Midlothian, Texas, so they told Vasquez to direct Chappo to meet there.

According to Investigator McKinney, Vasquez parked his minivan in the driveway of the vacant house while the investigators parked out on the street in an undercover vehicle. Other law enforcement officers were parked around the corner "to help out with the takedown team whenever" Chappo arrived. The takedown team wore black, bulletproof vests that said "Police" on the front and back. Vasquez was instructed to stay inside his minivan until Chappo arrived.

After approximately twenty minutes had elapsed from the time law enforcement arrived at the vacant house, a red Ford F-150 pickup truck pulled into the driveway. A Hispanic male, Chappo, and a Caucasian female, Amber, exited the pickup truck from the passenger side.[2] The takedown team subsequently approached the truck and ordered Chappo and Amber to the ground. Investigator McKinney approached the open passenger door and ordered appellant, who was the driver of the pickup truck, to get out. Appellant refused to comply. Investigator McKinney testified that it appeared as if appellant was holding something while gripping the steering wheel. Thereafter, Lieutenant Garland Wolf pulled appellant out of the vehicle. Because appellant

---

[2] Chappo was later identified as Jose Alberto Orozco-Becerra, and Amber was later identified as Amber Vanderzwart.

appeared to be holding something, Investigator McKinney looked inside the pickup truck to see what appellant had dropped. Investigator McKinney saw "a Ziploc baggy with some type of white substance in it, a crystal substance" on the driver's side floorboard. He was certain that this was the methamphetamine that Vasquez had ordered. Subsequent testing confirmed Investigator McKinney's belief that the white, crystal substance was indeed methamphetamine. At this point, appellant, Chappo, and Amber were arrested.

A search of the vehicle yielded several incriminating items. In particular, a cell phone, identified as belonging to appellant, was found. The cell phone had a GPS-map function activated showing the location of 920 Crockett. In addition, law enforcement found amphetamine pills in a baggy in the seat console and a prescription bottle with appellant's name on the label in the center console. Moreover, during a pat-down of appellant's person, law enforcement found a pipe used for smoking methamphetamine and a baggy of methamphetamine weighing 3.25 grams in appellant's pocket. The pipe had burn marks, indicating that it had been used. Furthermore, law enforcement found ledgers containing notes of narcotics transactions and an insurance card, which indicated that the pickup truck was appellant's.

In his testimony, Investigator McKinney confirmed that the agreed delivery amount was twenty-eight grams of methamphetamine; however, based on field tests, law enforcement only found 24.7 grams of methamphetamine in the pickup truck. The seized drugs were packaged and sent to the lab for testing.

Lieutenant Wolf also testified about what happened that day. According to his testimony, Lieutenant Wolf also observed appellant with something in his hand while inside the pickup truck. As he attempted to apprehend appellant, Lieutenant Wolf saw that appellant "made a motion towards the floorboard" and that after the vehicle "was free of any other occupants," he "did notice on the driver's side floorboard immediately adjacent to the area where he [appellant] had made that movement a clear cellophane or self-sealing plastic bag with a white type crystal substance in it." Lieutenant Wolf denied that appellant's movement towards the floorboard was really toward the door handle.

Chris Youngkin, a forensic scientist at the Texas Department of Public Safety Crime Laboratory in Garland, Texas, stated that he tested the evidence collected from the crime scene. According to Youngkin, the pills found in the seat console were amphetamine and had a net weight of 1.94 grams. The bag found in appellant's pocket contained 3.25 grams of methamphetamine, and the bag found on the floorboard of the pickup truck weighed 18.25 grams and contained methamphetamine.

Appellant was subsequently charged with one count of each of the following: (1) possession of a controlled substance, namely methamphetamine, in an amount greater than one gram but less than four grams (Count 1); (2) possession of a controlled substance, namely amphetamine, in an amount greater than one gram but less than four grams (Count 2); and (3) possession of a controlled substance, namely methamphetamine, in an amount greater than four grams but less than 200 grams with intent to deliver (Count 3). *See id.* §§ 481.112(a), 481.115(a). Each of the indictments also

contained an enhancement paragraph referencing appellant's May 2, 2005 conviction for felony possession with intent to deliver methamphetamine in an amount greater than four grams but less than 200 grams.

On July 23, 2012, trial commenced in this matter, and at the conclusion of the evidence, the jury found appellant guilty on all three counts.[3] The jury assessed punishment as follows: (1) forty years' confinement in the Institutional Division of the Texas Department of Criminal Justice with a $1,400 fine for Count 3; and (2) two years' confinement with no fine for Counts 1 and 2. The trial court ordered that the sentences run concurrently and thereafter certified appellant's right of appeal in all three cases. Appellant later filed motions for new trial in each case; these motions were overruled by operation of law. *See* TEX. R. APP. P. 21.8(a), (c). These appeals followed.

## II. MOTION TO SUPPRESS

In his first issue, appellant contends that the trial court abused its discretion in denying his motion to suppress because police did not have reasonable suspicion to detain him, nor did they have probable cause to arrest or search him and his vehicle. We disagree.

### A. Standard of Review

We review the trial court's ruling on a motion to suppress evidence for an abuse of discretion, using a bifurcated standard. *See Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010); *Guzman v. State*, 955 S.W.2d 85, 88-89 (Tex. Crim. App. 1997). We

---

[3] Prior to the commencement of trial, appellant filed a motion to suppress, which was denied by the trial court after a hearing.

give "almost total deference" to the trial court's findings of historical fact that are supported by the record and to mixed questions of law and fact that turn on an evaluation of credibility and demeanor. *Guzman*, 955 S.W.2d at 89. We review de novo the trial court's determination of the law and its application of law to facts that do not turn upon an evaluation of credibility and demeanor. *Id.* When the trial court has not made a finding on a relevant fact, we imply the finding that supports the trial court's ruling, so long as it finds some support in the record. *State v. Kelly*, 204 S.W.3d 808, 818-19 (Tex. Crim. App. 2006); *see Moran v. State*, 213 S.W.3d 917, 922 (Tex. Crim. App. 2007). We will uphold the trial court's ruling if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006).

When ruling on a motion to suppress evidence, the trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24-25 (Tex. Crim. App. 2007). When reviewing a trial court's ruling on a motion to suppress, we view all of the evidence in the light most favorable to the ruling. *Garcia-Cantu v. State*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008).

The Fourth Amendment protects against unreasonable searches and seizures by government officials. U.S. CONST. amend. IV; *see Wiede*, 214 S.W.3d at 24. To suppress evidence because of an alleged Fourth Amendment violation, the defendant bears the initial burden of producing evidence that rebuts the presumption of proper police conduct. *Amador v. State*, 221 S.W.3d 666, 672 (Tex. Crim. App. 2007); *see Young v. State*,

283 S.W.3d 854, 872 (Tex. Crim. App. 2009). A defendant satisfies this burden by establishing that a search or seizure occurred without a warrant. *Amador*, 221 S.W.3d at 672. Once the defendant has made this showing, the burden of proof shifts to the State, which is then required to establish that the search or seizure was conducted pursuant to a warrant or was reasonable. *Id.* at 672-73; *Torres v. State*, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005).

Whether a search is reasonable is a question of law that we review de novo. *Kothe v. State*, 152 S.W.3d 54, 62 (Tex. Crim. App. 2004). Reasonableness is measured by examining the totality of the circumstances. *Id.* at 63. It requires a balancing of the public interest and the individual's right to be free from arbitrary detentions and intrusions. *Id.* A search conducted without a warrant is per se unreasonable unless it falls within one of the "specifically defined and well-established" exceptions to the warrant requirement. *McGee v. State*, 105 S.W.3d 609, 615 (Tex. Crim. App. 2003).

### B. Reasonable Suspicion

The Texas Court of Criminal Appeals has recognized three distinct categories of interactions between police officers and citizens: (1) encounters; (2) investigative detentions; and (3) arrests. *State v. Perez*, 85 S.W.3d 817, 819 (Tex. Crim. App. 2002). Courts look to the totality of the circumstances to determine into which category an interaction falls. *Crain*, 315 S.W.3d at 49.

An investigatory detention occurs when a person yields to an officer's show of authority under a reasonable belief he is not free to leave. *Id.* The inquiry is whether a reasonable person in the citizen's position would have felt free to decline the officer's

requests or otherwise terminate the encounter. *Id.* "[A] police officer can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." *Woods v. State*, 956 S.W.2d 33, 35 (Tex. Crim. App. 1997) (quoting *Terry v. Ohio*, 392 U.S. 1, 29, 88 S. Ct. 1868, 1884, 20 L. Ed. 2d 889 (1968)). This is an objective standard that disregards any subjective intent of the detaining officer and looks solely to whether an objective basis for the detention exists. *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). When an officer subjects a defendant to an investigatory detention, it is the State's burden to prove the reasonableness of the warrantless detention. *Id.*

Reasonable suspicion exists if the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude a particular person actually is, has been, or soon will be engaged in criminal activity. *Castro v. State*, 227 S.W.3d 737, 741 (Tex. Crim. App. 2007). Whether reasonable suspicion exists depends on the content of the information known to the officer as well as its degree of reliability. *Martinez v. State*, 348 S.W.3d 919, 923 (Tex. Crim. App. 2011). The State need not, however, establish that a crime actually occurred prior to the investigatory detention. *Id.* In determining what constitutes reasonable suspicion, a court may look only at those facts known to the officer at the inception of the detention, and a detention or search unlawful at its inception may not be validated by what it turns up. *State v. Griffey*, 241 S.W.3d 700, 704 (Tex. App.—Austin 2007, pet. ref'd); *see Florida v. J.L.*, 529 U.S. 266, 271, 120 S. Ct. 1375, 1379, 146 L. Ed. 2d 254 (2000)

("The reasonableness of official suspicion must be measured by what the officers knew before they conducted their search."). The reasonableness of a temporary detention is examined in terms of the "totality of the circumstances" at its inception. *See Woods*, 956 S.W.2d at 38. Individual circumstances must not be considered in isolation, and the facts known to the officer must amount to something more than an inchoate and unparticularized suspicion or hunch. *Id.* at 35. Moreover, the *Woods* Court recognized that "there may be instances when a person's conduct viewed in a vacuum, appears purely innocent, yet when viewed in light of the totality of the circumstances, those actions give rise to reasonable suspicion." *Id.* at 38.

There is no requirement that the "facts adduced to give rise to a reasonable suspicion must show that the detainee has committed, is committing, or is about to commit, a particular and distinctively identifiable penal offense." *Derichsweiler v. State*, 348 S.W.3d 906, 916 (Tex. Crim. App. 2011). The *Derichsweiler* Court explained that:

> Unlike the case with probable cause to justify an arrest, it is not a sine qua non of reasonable suspicion that a detaining officer be able to pinpoint a particular penal infraction. The reason is simple but fundamental. A brief investigative detention constitutes a significantly lesser intrusion upon the privacy and integrity of the person than a full-blown custodial arrest. For this reason, a warrantless investigative detention may be deemed "reasonable" for Fourth Amendment purposes on the basis of a lesser quantum or quality of information—reasonable suspicion rather than probable cause. Likewise, because a detention is less intrusive than an arrest, the specificity with which the articulable information known to the police must demonstrate that a particular penal offense has occurred, is occurring, or soon will occur, is concomitantly less. It is, after all, only an "investigative" detention. So long as the intrusion does not exceed the legitimate scope of such a detention and evolve into the greater intrusiveness inherent in an arrest-sans-probable-cause, the Fourth Amendment will tolerate a certain degree of police proaction.

*Id.* at 916-17 (internal footnotes omitted) (emphasis in original); *see Woodward v. State*, 668 S.W.2d 337, 344 (Tex. Crim. App. 1987) (op. on reh'g) (noting that probable cause is to be evaluated by the court on the basis of the collective information of the police rather than that of only the officer who conducts the search or performs the act of arresting).

In the instant case, the trial court concluded that the information provided by Vasquez was sufficiently corroborated to provide reasonable suspicion for the detention. This determination is supported by several facts in the record. First, Vasquez told police that he could arrange for the illegal purchase of methamphetamines from one of his suppliers, Chappo. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.102(6) (West 2010); *see also id.* § 481.112(a). Further, communications between Vasquez and Chappo, which were monitored by Investigators McKinney and Moon, clearly indicated that a narcotics transaction was taking place. Moreover, after Chappo requested that the transaction not take place at a Walmart, Vasquez suggested they meet at a vacant house located at 920 Crockett. After waiting twenty minutes, a red Ford F-150 pickup truck pulled into the driveway at 920 Crockett. Inside the pickup truck was appellant, a Hispanic male, and a Caucasian female. Vasquez identified the Hispanic male as Chappo and the female as Amber—names he provided to investigators when he was first arrested. Considering the knowledge of both Investigators McKinney and Moon in addition to the totality of the circumstances, we conclude that the record contains sufficient, articulable facts that give rise to reasonable suspicion that criminal activity was afoot and, thus, supports the temporary detention of the occupants of the pickup

truck.  *See State v. Kerwick*, 393 S.W.3d 270, 273-74 (Tex. Crim. App. 2013) (citing *Martinez*, 348 S.W.3d at 923; *York v. State*, 342 S.W.3d 528, 536 (Tex. Crim. App. 2011)); *see also Castro*, 227 S.W.3d at 741.

## C.     Probable Cause

Warrantless arrests are authorized only if (1) there is probable cause, and (2) the arrest falls within one of the limited circumstances provided by statute.  *Lunde v. State*, 736 S.W.2d 665, 666 (Tex. Crim. App. 1997).  Probable cause exists when the police have relatively trustworthy information that, considered as a whole, is sufficient to cause a reasonable person to believe a particular person has committed or is committing an offense.  *Hughes v. State*, 24 S.W.3d 833, 838 (Tex. Crim. App. 2000).  "Probable cause is a 'fluid concept' that cannot be 'readily, or even usefully, reduced to a neat set of legal rules.'"  *Baldwin v. State*, 278 S.W.3d 367, 371 (Tex. Crim. App. 2009) (quoting *Maryland v. Pringle*, 540 U.S. 366, 370-71, 124 S. Ct. 795, 800, 157 L. Ed. 2d 769 (2003)).  "Though the concept evades precise definition, it involves 'a reasonable ground for belief of guilt' that is 'particularized with respect to the person to be searched or seized.'"  *Id.* (quoting *Pringle*, 540 U.S. at 371, 124 S. Ct. at 800).  With regard to statutory authorization, article 14.03 of the Texas Code of Criminal Procedure authorizes a peace officer to "arrest, without warrant[,] . . . persons found in suspicious places and under circumstances which reasonably show that such persons have been guilty of some felony . . . or are about to commit some offense."  TEX. CODE CRIM. PROC. ANN. art. 14.03(a)(1) (West Supp. 2012).

The lawful scope of a search incident to a legal warrantless arrest includes the person of the arrestee. *Thornton v. United States*, 541 U.S. 615, 620, 124 S. Ct. 2127, 2130, 158 L. Ed. 2d 905 (2004). Moreover, "circumstances unique to the vehicle context justify" a search of the vehicle when it is "reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle." *Arizona v. Gant*, 556 U.S. 332, 343, 129 S. Ct. 1710, 1719, 173 L. Ed. 2d 485 (2009) (citing *Thornton*, 541 U.S. at 632, 124 S. Ct. at 2137-38 (Scalia, J., concurring)); *see, e.g., Tyler v. State*, No. 02-10-00194-CR, 2011 Tex. App. LEXIS 6146, at *8 (Tex. App.—Fort Worth Aug. 4, 2011, no pet.) (mem. op., not designated for publication) (explaining that "[o]nce an officer has probable cause to arrest, he may search a vehicle incident to a recent occupant's arrest in two circumstances," one of which being "when it is reasonable to believe that the vehicle contains evidence of the offense of arrest"). A totality of the circumstances analysis controls whether probable cause to search without a warrant exists. *See Neal v. State*, 256 S.W.3d 264, 282-83 (Tex. Crim. App. 2008); *see also Whaley v. State*, 686 S.W.2d 950, 951 (Tex. Crim. App. 1985).

Here, the evidence shows that appellant drove Chappo and Amber to the vacant house designated for the drug deal. In addition, while officers were detaining Chappo and Amber, appellant was holding something in his hand while gripping the steering wheel. Lieutenant Wolf then saw appellant make a motion toward the driver's side floorboard. After appellant was removed from the pickup truck, Investigator McKinney and Lieutenant Wolf both observed a Ziploc bag on the driver's side floorboard in plain view. Contained inside the Ziploc bag was a white, crystal

substance that Investigator McKinney and Lieutenant Wolf believed to be methamphetamine. Field tests confirmed that the contents of the Ziploc bag was indeed methamphetamine—an illegal controlled substance. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.102(6), 481.112(a). After observing the Ziploc bag of methamphetamine in plain view, appellant was arrested.

We therefore conclude that, when considered in its totality, the evidence mentioned above would cause a reasonable person to believe that appellant was committing or had committed an offense—namely, unlawful possession of a controlled substance. *See Pringle*, 540 U.S. at 370-71, 124 S. Ct. at 800; *Baldwin*, 278 S.W.3d at 371; *see also Hughes*, 24 S.W.3d at 838. Moreover, we further conclude that probable cause existed to search the vehicle and ultimately arrest appellant. *See Pringle*, 540 U.S. at 370-71, 124 S. Ct. at 800; *Baldwin*, 278 S.W.3d at 371; *see also Hughes*, 24 S.W.3d at 838. Furthermore, because we have concluded that law enforcement had reasonable suspicion to detain the pickup truck and its occupants, and because law enforcement had probable cause to search appellant and the pickup truck and ultimately arrest appellant, we cannot say that the trial court abused its discretion in denying appellant's motion to suppress. *See Crain*, 315 S.W.3d at 48; *see also Guzman*, 955 S.W.2d at 88-89. Accordingly, we overrule appellant's first issue.

### III. ACCOMPLICE-WITNESS TESTIMONY

In his fourth issue, appellant complains that Vasquez was an unreliable accomplice witness and that a rational jury could not have found that the corroborating evidence tended to connect appellant to the delivery of the methamphetamine.

## A.    Applicable Law

The Texas Court of Criminal Appeals has stated the standard of review for sufficiency of non-accomplice evidence as follows:

> [U]nder Texas Code of Criminal Procedure Article 38.14, a conviction cannot stand on an accomplice witness's testimony unless the testimony is corroborated by other, non-accomplice evidence that tends to connect the accused to the offense.   Evidence that the offense was committed is insufficient to corroborate an accomplice witness's testimony.   And an accomplice's testimony cannot be corroborated by prior statements made by the accomplice witness to a third person.
>
> . . . .
>
> When reviewing the sufficiency of non-accomplice evidence under Article 38.14, we decide whether the inculpatory evidence tends to connect the accused to the commission of the offense.   The sufficiency of non-accomplice evidence is judged according to the particular facts and circumstances of each case. The direct or circumstantial non-accomplice evidence is sufficient corroboration if it shows that rational jurors could have found that it sufficiently tended to connect the accused to the offense.   So when there are conflicting views of the evidence—one that tends to connect the accused to the offense and one that does not—we will defer to the factfinder's resolution of the evidence.   Therefore, it is not appropriate for appellate court to independently construe the non-accomplice evidence.

*Smith v. State*, 332 S.W.3d 425, 439, 442 (Tex. Crim. App. 2011) (internal citations omitted); *see Gill v. State*, 873 S.W.2d 45, 48 (Tex. Crim. App. 1994) (noting that appellate courts review non-accomplice evidence in the light most favorable to the verdict); *see also* TEX. CODE CRIM. PROC. ANN. art. 38.14 (West 2005).

The Texas Court of Criminal Appeals has also noted that:   "There need only be some non-accomplice evidence tending to connect the defendant to the crime, not to every element of the crime."  *Joubert v. State*, 235 S.W.3d 729, 731 (Tex. Crim. App. 2007);

*see Dowthitt v. State*, 931 S.W.2d 244, 249 (Tex. Crim. App. 1996) ("No precise rule can be formulated as to the amount of evidence required to corroborate. The non-accomplice evidence does not need to be in itself sufficient to establish guilt beyond a reasonable doubt."). Furthermore, when reviewing the sufficiency of the non-accomplice evidence, "all of the non-accomplice testimony is viewed together, rather than as isolated, unrelated incidents . . . ." *Simmons v. State*, 282 S.W.3d 504, 511 (Tex. Crim. App. 2009). And "circumstances that are apparently insignificant may constitute sufficient evidence of corroboration." *Malone v. State*, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008) (citing *Trevino v. State*, 991 S.W.2d 849, 852 (Tex. Crim. App. 1999)).

Proof that the accused was at or near the scene of the crime at or about the time of its commission, when coupled with other suspicious circumstances, may tend to connect the accused to the crime so as to furnish sufficient corroboration to support a conviction. *See id.*; *see also Brown v. State*, 672 S.W.2d 487, 489 (Tex. Crim. App. 1984). Evidence that the defendant was in the company of the accomplice near the time or place of the offense is also proper corroborating evidence. *McDuff v. State*, 939 S.W.2d 607, 613 (Tex. Crim. App. 1997). If the combined weight of the non-accomplice evidence tends to connect the defendant to the offense, then the requirement of article 38.14 has been fulfilled. *Cathey v. State*, 992 S.W.2d 460, 462 (Tex. Crim. App. 1999).

**B.    Discussion**

Here, Vasquez, at the direction of Investigators McKinney and Moon, arranged for an ounce of methamphetamine to be delivered to a vacant house to which appellant drove his pickup truck. Investigator McKinney and Lieutenant Wolf both observed

appellant sitting in the driver's seat of the pickup truck with something in his hand. Lieutenant Wolf testified that he later saw appellant make a motion to the driver's side floorboard. After appellant was removed from the pickup truck, Investigator McKinney and Lieutenant Wolf found a Ziploc bag containing 18.25 grams of methamphetamine in the area where appellant had reached prior to removal. In addition, law enforcement found 3.25 grams of methamphetamine and a pipe used to smoke methamphetamine in appellant's pocket. Drug ledgers were also found inside the pickup truck. And finally, law enforcement found appellant's cell phone inside the truck. The cell phone had a GPS feature that was set to the 920 Crockett address that was used for the delivery location.

When viewing the non-accomplice evidence in the light most favorable to the verdict, we conclude that there is sufficient evidence that "tends to connect the defendant to the offense." *See* TEX. CODE CRIM. PROC. ANN. art. 38.14; *see also Smith*, 332 S.W.3d at 439, 442; *Joubert*, 235 S.W.3d at 731; *Gill*, 873 S.W.2d at 48. As such, we hold that the record contains sufficient evidence to corroborate the accomplice-witness evidence contained in the record and, therefore, satisfies article 38.14 of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 38.14; *see also Joubert*, 235 S.W.3d at 731; *Cathey*, 992 S.W.2d at 462; *Gill*, 873 S.W.2d at 48. We therefore overrule appellant's fourth issue.

### IV. THE JURY AND APPELLANT'S CHALLENGES FOR CAUSE

In what appears to be his fifth issue, appellant complains about a juror, Timothy Rawlings, who served on the panel. Specifically, appellant complains that Rawlings

withheld information during voir dire, which limited appellant's ability to exercise his challenges for cause.

Apparently, appellant raised this issue in his amended motion for new trial. In that filing, appellant complained about "[i]mproper jury conduct," though he did not state any facts to support this contention. And as stated above, appellant's motion for new trial was overruled by operation of law.

Nevertheless, in support of this issue, Appellant directs us to the State's questioning of Rawlings during its portion of voir dire. In response to questions about whether he could hold the State to its burden of proving its case beyond a reasonable doubt and whether he could be fair and impartial, Rawlings responded, "Yes." Rawlings also denied knowing any of the listed witnesses in this case. Moreover, when the State asked whether any of the venirepersons knew appellant, no one responded. Appellant also directs us to an affidavit executed by Ame McIntyre, which is attached to appellant's brief but not included in the record. In her affidavit, Ame avers that Rawlings, the jury foreman, was present at appellant's bond-reduction hearing; that there was information provided at the bond-reduction hearing that was not provided to the jury during the trial; and that "[k]nowledge of this information could have been used or construed against Mr. Richard McIntyre as privy information that should not have been allowed to a juror."

We recognize that Ame's affidavit is attached to appellant's brief and is not included in the records before us.[4] The Texas Court of Criminal Appeals and this Court have stated that an appellate court cannot consider factual assertions that are outside the record, and "a party cannot circumvent this prohibition by submitting an affidavit for the first time on appeal." *See Whitehead v. State*, 130 S.W.3d 866, 872 (Tex. Crim. App. 2004); *see also Rodriguez v. State*, 996 S.W.2d 402, 403 (Tex. App.—Waco 1999, no pet.). Instead, we are limited to the evidence before the trial court at the time of the trial court's ruling. *See Whitehead*, 130 S.W.3d at 872. Therefore, because Ame's affidavit was not formally included in the record, we cannot consider it in this appeal. *See id.; see also Rodriguez*, 996 S.W.2d at 403. Furthermore, because appellant has not provided any relevant evidence in support of his jury-misconduct allegation, we cannot say that the trial court abused its discretion in denying appellant's motion for new trial on this ground. *See Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007) (stating that we review the trial court's ruling on a motion for new trial under an abuse-of-discretion standard and that we view the evidence in the light most favorable to the trial court's ruling and uphold the ruling if it is within the zone of reasonable disagreement). Accordingly, we overrule appellant's fifth issue.

## V. SUFFICIENCY OF THE EVIDENCE

In what appears to be his second and third issues, appellant argues that the evidence supporting his convictions is legally and factually insufficient.

---

[4] Appellant did not proffer Ame's affidavit at the time he filed his motions for new trial or any other time in the trial court.

## A.  Standard of Review

The Texas Court of Criminal Appeals, in *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010), abandoned the factual-sufficiency standard in criminal cases; thus, we need only consider the sufficiency of the evidence under the legal-sufficiency standard articulated in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979).

In *Lucio v. State*, 351 S.W.3d 878, 894 (Tex. Crim. App. 2011), the Texas Court of Criminal Appeals expressed our standard of review of a sufficiency issue as follows:

> In determining whether the evidence is legally sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).  This "familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."  *Jackson*, 443 U.S. at 319.  "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction."  *Hooper*, 214 S.W.3d at 13.

*Id.*

Our review of "all of the evidence" includes evidence that was properly and improperly admitted.  *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001).  And if the record supports conflicting inferences, we must presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination.  *Jackson*, 443 U.S. at 326; 99 S. Ct. at 2793.  Furthermore, direct and circumstantial

evidence are treated equally: "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper*, 214 S.W.3d at 13. Finally, it is well established that the factfinder is entitled to judge the credibility of the witnesses and can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).

The sufficiency of the evidence is measured by reference to the elements of the offense as defined by a hypothetically-correct jury charge for the case. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Under a hypothetically-correct jury charge, for Count 3, the State was required to prove beyond a reasonable doubt that appellant: (1) knowingly (2) possessed, (3) with intent to deliver, (4) four grams or more but less than 200 grams of methamphetamine. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(a). For the other counts, the State was required to prove beyond a reasonable doubt that appellant: (1) knowingly (2) possessed (4) one gram or more but less than four grams of a controlled substance. *See id.* § 481.115(a).

## B. The Two Counts of Unlawful Possession of a Controlled Substance

To prove unlawful possession of a controlled substance, the State was required to prove beyond a reasonable doubt that: (1) appellant exercised control, management, or care over the substance; and (2) appellant knew that the matter possessed was contraband. *Blackman v. State*, 350 S.W.3d 588, 594 (Tex. Crim. App. 2011); *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005). Whether this evidence is direct or circumstantial, "it must establish, to the requisite level of confidence, that the accused's

connection with the drug was more than just fortuitous. This is the whole of the so-called 'affirmative links' rule." *Poindexter*, 153 S.W.3d at 405-06. The affirmative links rule is designed to protect the innocent bystander from conviction based solely upon his fortuitous proximity to someone else's drugs. *Id.* at 406. Mere presence at the location where drugs are found is insufficient, by itself, to establish actual care, custody, or control of those drugs. *Evans v. State*, 202 S.W.3d 158, 162 (Tex. Crim. App. 2006). However, presence or proximity, when combined with other evidence, either direct or circumstantial (e.g., "links"), may be sufficient to establish that element beyond a reasonable doubt. *Id.* Evidence which links the defendant to the controlled substance suffices for proof that he possessed it knowingly. *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995). It is not the number of links that is dispositive, but rather the logical force of all of the evidence, direct and circumstantial. *Evans*, 202 S.W.3d at 162.

In Count 1, appellant was convicted of unlawful possession of methamphetamine in an amount greater than one gram but less than four grams. In Count 2, appellant was convicted of unlawful possession of amphetamine in an amount greater than one gram but less than four grams. The evidence showed that 1.94 grams of amphetamine were found inside a seat console in the pickup truck that appellant drove and insured. Furthermore, after a pat-down search of appellant's person, law enforcement discovered that appellant had 3.25 grams of methamphetamine and a pipe used for smoking methamphetamine in his pocket. And finally, law enforcement observed appellant drop a Ziploc bag containing an additional 18.25 grams of methamphetamine prior to being pulled out of the pickup truck.

Based on the foregoing evidence, we cannot say that appellant's connection to the 1.94 grams of amphetamine and 3.25 grams of methamphetamine was merely fortuitous. *See Blackman*, 350 S.W.3d at 594; *see also Poindexter*, 153 S.W.3d at 405. The foregoing evidence demonstrates appellant's involvement with drugs. *See Evans*, 202 S.W.3d at 162; *Poindexter*, 153 S.W.3d at 405; *see also Brown*, 911 S.W.2d at 747. As such, we conclude that the evidence links appellant to the discovered drugs. *See Evans*, 202 S.W.3d at 162; *Poindexter*, 153 S.W.3d at 405; *see also Brown*, 911 S.W.2d at 747. Accordingly, viewing the evidence in the light most favorable to the jury's verdict, we cannot say that the evidence is legally insufficient to support appellant's convictions in Counts 1 and 2. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(a); *see also Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Lucio*, 351 S.W.3d at 894.

## C. The One Count of Unlawful Possession of a Controlled Substance With Intent to Deliver

Intent to deliver may be established by expert testimony, such as testimony from experienced law enforcement, and circumstantial evidence, such as evidence of an accused's possession of the contraband. *See Moreno v. State*, 195 S.W.3d 321, 325 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd); *Patterson v. State*, 138 S.W.3d 643, 650 (Tex. App.—Dallas 2004, no pet.) (stating that "intent to deliver" can be proved by circumstantial evidence, such as the quantity of the drugs possessed, the manner of packaging, and the presence of the accused on the premises); *see also Terrell v. State*, No. 10-11-00022-CR, 2011 Tex. App. LEXIS 5605, at *7 (Tex. App.—Waco July 20, 2011, pet. ref'd) (mem. op., not designated for publication). Further, intent to deliver is a fact

question for the trier of fact to resolve, and it may be inferred from the acts, words, or conduct of the accused.  *See Taylor*, 106 S.W.3d at 831.

Here, in Count 3, appellant was convicted of unlawfully possessing more than four grams but less than 200 grams of methamphetamine with intent to deliver.  *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(a).  The facts adduced at trial indicated that Vasquez arranged for the delivery of an ounce of methamphetamine at the house located at 920 Crockett in exchange for $1,400.  Through text messages, Chappo agreed to the drug deal.  Appellant, Chappo, and Amber arrived at the house shortly thereafter.  Upon the arrival of appellant, Chappo, and Amber, Investigator McKinney and Lieutenant Wolf observed appellant holding something in his hand while gripping the steering wheel.  After Chappo and Amber exited the pickup truck, appellant made a motion towards the driver's side floorboard.  Law enforcement requested that appellant exit the pickup truck, but he refused.  After removing appellant from the pickup truck, Investigator McKinney and Lieutenant Wolf found a Ziploc bag containing 18.25 grams of methamphetamine on the driver's side floorboard—an amount that was similar to that which was agreed upon.  In addition, law enforcement found ledgers used in drug deals and appellant's cell phone, which had a GPS function that displayed the 920 Crockett address.  Viewing the evidence in the light most favorable to the jury's verdict, we conclude that a rational factfinder could conclude that appellant unlawfully possessed more than four grams but less than 200 grams of methamphetamine that he intended to deliver to Vasquez in exchange for $1,400.  *See id.*; *see also Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Lucio*, 351 S.W.3d at 894.  As such, we conclude that the evidence

supporting appellant's conviction as to Count 3 is legally sufficient.  *See* TEX. HEALTH &

SAFETY CODE ANN. § 481.112(a); *see also Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Lucio*,

351 S.W.3d at 894.  Moreover, based on the foregoing, we overrule appellant's second

and third issues.

## VI.  CONCLUSION

Having overruled all of appellant's issues on appeal, we affirm the judgments of

the trial court.


AL SCOGGINS
Justice


Before Chief Justice Gray,
        Justice Davis, and
        Justice Scoggins
Affirmed
Opinion delivered and filed October 24, 2013
Do not publish
[CRPM]